| | |
|---|---|
| CORDULA LUTZ,   )<br>  )<br>  Plaintiff,   )<br>  )<br>vs.   )<br>  )<br>CITY OF CHARLOTTE, et al.,   )<br>  )<br>  Defendants.   )<br>_____   ) | **ORDER** |

**THIS MATTER** comes before the Court on a Motion to Dismiss filed by Defendant City of Charlotte, (Doc. No. 25), on a Motion to Dismiss filed by Defendants Jane Doe, John Doe, and Kia McKinney, (Doc. No. 26), and on a Motion to Dismiss filed by Live Nation Worldwide, Inc., (Doc. No. 29).

## I. BACKGROUND AND PLAINTIFF'S ALLEGATIONS

Plaintiff Cordula Lutz filed this action in Mecklenburg County Superior Court on January 31, 2020, naming the following persons and entities as Defendants: (1) City of Charlotte; (2) Kia McKinney, identified as a police officer with the Charlotte Mecklenburg Police Department ("CMPD"), individually and in her official capacity; (3) Jane Doe, identified as a police officer with the CMPD, individually and in her official capacity; (4) John Doe, identified as a police officer with the CMPD, individually and in his official capacity; (5) DLS Events, LLC; and (6) Live National Worldwide, Inc. Defendants removed the case to this Court on March 3, 2020, based on federal question jurisdiction, under 28 U.S.C. § 1331. Defendants filed their separate motions to dismiss on May 18, 2020, and May 26, 2020. This Court held a hearing on the motions on September 16, 2020. This matter is ripe for disposition.

Plaintiff alleges the following facts, which are taken as true for the purposes of the pending motions to dismiss:

During the weekend of June 7, 2019, Plaintiff, a medical doctor, visited her parents in Severn, Maryland. Typically, when Plaintiff visits her parents, her mother will give her one or more $100 bills. Plaintiff's mother gave her two, $100 bills during her June 2019 visit. On June 16, 2019, Plaintiff attended a concert at the Charlotte Ampitheatre located at the Music Factory, 1000 North Carolina Music Factory Boulevard. Plaintiff arrived at the concert at around 6:15 pm. Her friend who planned to attend the concert had not yet arrived. Plaintiff went to a concession stand to buy a beer. After being served, Plaintiff handed the bartender/concession worker one of the $100 bills her mother had given her. The bartender took the money and gave Plaintiff change. Plaintiff's $100 was marked, and the marking indicated that the bill was not counterfeit. Plaintiff then walked back to her seat.

After Plaintiff's friend arrived, they met up with another friend who was attending the concert. As Plaintiff and her friends were talking, a Live Nation employee walked up to the group and asked Plaintiff if she "had tickets to be in th[e] section." Plaintiff showed the employee her tickets. The Live Nation employee did not question any other individual in the group of friends. Plaintiff was the only African-American in the group of friends—the rest were all white.

Plaintiff and her friends continued to watch the concert until around 7:45 p.m., when three CMPD officers (one male and two females) approached her and said, "Ma'am, you need to come with us." The CMPD officers proceeded to unlawfully seize Plaintiff and escorted her out of the venue. When Plaintiff asked where she was going, a CMPD officer told her to "just keep walking." When they got outside, the officer told Plaintiff she was under arrest for presenting a

counterfeit bill to buy a beer. Plaintiff attempted to explain to the CMPD officers that she had purchased the beer over an hour and a half before that without a problem and that she did not believe the bill was counterfeit because she had received change, but the officers arrested her anyway.

Plaintiff also tried to explain to the officers that she is a medical doctor and could have used an alternative payment method if there was something wrong with the $100 bill. The officers then unlawfully searched Plaintiff, searching through her fanny pack and then making her take off her shoes to search her shoes as well. The officers never asked for Plaintiff's consent before they searched her.

All of the Defendants knew that the bill they believed to have been counterfeit had been marked at least five times, with each marking demonstrating that the bill was not counterfeit. A picture of an older bill was shown to DLS, Live Nation, and CMPD employees to confirm that Plaintiff's bill was not counterfeit. Despite the overwhelming evidence that the bill Plaintiff used was not counterfeit, Defendants still had Plaintiff unlawfully arrested, while negligently ignoring the evidence. At no point did the CMPD officers have a warrant to arrest or search Plaintiff, nor did they have probable cause to arrest or search her.

While in handcuffs, Plaintiff began crying and asked to speak with a manager, but the CMPD officer told her a manager did not want to speak with her. When Plaintiff asked why they believed the bill was counterfeit, the officer responded, "oh it's counterfeit because I know," with no other justification or reasoning. Upon arriving at the Mecklenburg County Jail, Plaintiff asked if she could use the restroom. The CMPD refused to remove the handcuffs for Plaintiff to use the restroom, so Plaintiff had to experience the humiliation of having an officer pull up her pants after she finished using the restroom. Plaintiff was then unlawfully booked at the jail,

3

where she remained until the following morning because the jail's computerized system was not working properly.

Around 5 a.m. that next morning, Plaintiff told an officer at the jail that she needed to call her office to cancel her first patient's appointment, which was scheduled for 7:10 a.m. At around 6:30 a.m., Plaintiff took an Uber home, and she contacted her friend who had attended the concert with her. Plaintiff's friend told her that she had said to the male CMPD officer, "You know she's a doctor, right?" The officer replied, "She's a doctor?"

Because probable cause did not exist to charge Plaintiff with any crime, her case was dismissed and disposed of. Due to the extreme mental, physical, and emotional anguish Plaintiff experienced and continues to experience, Plaintiff has had to take a considerable amount of time off from work to see a medical therapist and to attend various court proceedings and meetings with attorneys. Plaintiff's trauma and anguish have continued, for which she continues to seek medical care.

Based on the above factual allegations, Plaintiff brings the following claims: (1) malicious prosecution against all Defendants; (2) negligence and negligent hiring, retention, and supervision against all Defendants; (3) false imprisonment against all Defendants; (4) intentional and negligent infliction of emotional distress against all Defendants; (5) unfair and deceptive trade practices, pursuant to N.C. GEN. STAT. § 75-1.1, against Defendants DLS and Live Nation; (6) violation of the Fourth Amendment of the U.S. Constitution and Article I, Section 20 of the N.C. Constitution against Defendants City of Charlotte and Charlotte Mecklenburg Police Department; and (7) unlawful public accommodation discrimination based on race and ethnicity, pursuant to Title VII of the Civil Rights Act of 1964, against Defendant Live Nation.

II. **STANDARD OF REVIEW**

Federal Rule of Civil Procedure 12(b)(6) provides that a motion may be dismissed for failure to state a claim upon which relief can be granted. A motion to dismiss pursuant to Rule 12(b)(6) tests the sufficiency of the complaint without resolving contests of fact or the merits of a claim. Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992), cert. denied, 510 U.S. 828 (1993). Thus, the Rule 12(b)(6) inquiry is limited to determining if the allegations constitute "a short and plain statement of the claim showing the pleader is entitled to relief" pursuant to Federal Rule of Civil Procedure 8(a)(2). To survive a defendant's motion to dismiss, factual allegations in the complaint must be sufficient to "raise a right to relief above a speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). Thus, a complaint will survive if it contains "enough facts to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570).

For the purposes of a Rule 12(b)(6) analysis, a claim has facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (quoting Twombly, 550 U.S. at 556). The Court must draw all reasonable factual inferences in favor of the plaintiff. Priority Auto Grp., Inc. v. Ford Motor Co., 757 F.3d 137, 139 (4th Cir. 2014). In a Rule 12(b)(6) analysis, the Court must separate facts from legal conclusions, as mere conclusions are not entitled to a presumption of truth. Iqbal, 556 U.S. at 678. Importantly, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. However, well-pleaded factual allegations are entitled to a presumption of truth, and the court should determine whether the allegations plausibly give rise to an entitlement to relief. Id. at 679.

### III. DISCUSSION

First, Plaintiff's official capacity claims against the individual Defendants are dismissed

as redundant because "[s]uing a governmental employee in his 'official' capacity is simply another way of pleading an action against the governmental entity." Davis v. Durham Mental Health Developmental Disabilities Substance Abuse Area Auth., 320 F. Supp. 2d 378, 399 (M.D.N.C. 2004) (dismissing official capacity claims against individual defendants where the governmental entity was also sued); see also Kentucky v. Graham, 473 U.S. 159, 165–66 (1985).

As to the remaining claims against the remaining Defendants, taking Plaintiff's allegations as true and are construing them in the light most favorable to her, the Court will deny the motion to dismiss as to all of Plaintiff's claims against all Defendants. That is, the Court takes as true, on the motions to dismiss, Plaintiff's allegations that Defendants all knew, when Plaintiff was arrested and searched, that she had done nothing illegal whatsoever. That is, according to Plaintiff's allegations, Defendants knew that the $100 bill that Plaintiff used to buy a beer was not counterfeit, but Defendants still had her arrested. If Plaintiff's allegations are true—and on a motion to dismiss, this Court must presume them to be true—then she was subjected to a harsh and humiliating injustice, and the Court may liberally infer that this injustice arose based on the sole fact that Plaintiff is African-American and, therefore, was stereotyped for her race as a person who would pass a counterfeit bill. The Court will, therefore, allow this matter to move through the discovery phase so the parties can determine the circumstances—that is, the who, what, when, where, and why—that led to a respected medical doctor being arrested and taken to jail when a $100 bill she used to buy a beer at a concert was (according to Plaintiff's allegations) clearly not counterfeit. The Court will not delve into each individual claim because, as the Court stated at the hearing on the pending motions to dismiss, the standards for pleading claims under Iqbal and Twombly are extremely lenient. Here, Plaintiff has alleged sufficient facts as to each claim to survive Defendants' motions to dismiss. The Court can revisit each

6

claim on summary judgment after the parties have conducted discovery and the parties have presented more information to the Court as to the particular circumstances that led to Plaintiff's arrest.

### IV. CONCLUSION

Defendants' motions to dismiss are denied.

**IT IS, THEREFORE, ORDERED** that:

1. Defendants' Motions to Dismiss (Doc. Nos. 25, 26, 29), are **DENIED**.

Signed: November 21, 2020

Max O. Cogburn Jr
United States District Judge